The next case is number 21-1713, Marlon Guardado v. United States. Mr. Shea, please come to the podium and introduce yourself on the record to begin. Thank you. Good morning. I'm pleased to court Mark Shea for Marlon Guardado. Your Honor, is it possible I could reserve one minute? Yes. Thank you. Well, the point we're trying to make for Mr. Guardado is there is a reasonable probability that he would have gone to trial and been acquitted if he had known of the change in the situation after Rahif. There wasn't sufficient evidence to show that he knew he was a felon. We've gone through a lot of it in the briefing, but what I would point out is that evidence at a trial would have shown his mental illness, which both Bridgewater and a separate expert found. I acknowledge that Bridgewater had many different findings when Mr. Guardado was there, but at one point they found he had severe bipolar disorder with psychotic features. And another, the expert for the defense, found I think he had schizoaffective disorder, and that's quoted in the PSR. And importantly as to the mental illness, and without waiving our objections to the documents that are in the government addendum, to their brief that we object to, their reliability, I do think it's interesting when one looks at two of the cases here that the mental illness actually plays out as an important factor. So it's meaning it's not a hypothetical here. And what I mean by that is that one of the cases, I believe it's government addendum page 22, that case, that's the front of the case. At government addendum 23, it shows that Habe was issued to Bridgewater to bring him in for the sentencing. And so he's sentenced while he is coming in from Bridgewater. And there's no indication that there is a court clinician, meaning some of the district courts in Massachusetts have court clinics with an on-staff mental health person. No indication of that. No indication of expert funds. No indication that anything happened to deal with the fact that we had a person coming in from a hospital where ‑‑ Let me stop you for a moment because the argument you're making now would seem to be potentially an argument you could make even if he had been sentenced and served or at least sentenced to a felony sentence of a year and longer than a day and then say been released less than that. But in fact, if I understand it, he was never sentenced to more than a year, correct? That is absolutely correct. And you make the argument that under Massachusetts law, the law is that when you plea to a sentence of a year or less, even if charged for a crime that has a sentence of potentially more than a year, that's treated as a misdemeanor. Am I wrong about that? I guess the point I'm making is that Massachusetts law can be very confusing, even for practitioners initially, as to what is a felony and what is a misdemeanor. Because there are cases that have sole jurisdiction in the district court. There are cases that have sole jurisdiction in the superior court. And then there are cases that allow for a sentence to the House of Correction or a sentence to the state penitentiary. Because they allow for a sentence to the state penitentiary, they are in fact felonies. But most, I don't know the stats, but my guess is that about the majority of those, meaning like an A and BDW, assault dangerous weapon, which are in fact felonies. We don't dispute that. But most of them end up being resolved in a district court. They're not presented to a grand jury and brought forward. And so that the defendant is finding himself in the district court where misdemeanors are tried. But the question is, is there anything to indicate that the defendant, who's in the situation you just described, would ever have been informed officially that he was facing a misdemeanor or that the offense was a misdemeanor? Aside from it being in a place where misdemeanors occur, is there anything that would disabuse the defendant of the notion that he was facing a felony? I'm not sure that he affirmatively would have been told it was a misdemeanor, but my point is I don't think he would affirmatively have been told he was facing a felony. Well, he would have been told he was facing a sentence of more than a year. No. Respectfully. Is that right? Under the Massachusetts Rules of Criminal Procedure, at the point he was arraigned or at the point he pleaded, he would have had to be told what the maximum sentence available was. Respectfully, Judge, no. I understand the statute, but I'm practicing in the Massachusetts courts. You're saying Massachusetts doesn't follow the Massachusetts Rules of Criminal Procedure? How can we presume that? Yeah. On any given day, anywhere in Massachusetts, the judge is not telling them that there was a possibility of a state sentence on that case, because now it's in the district court, so it's just a house of correction sentence. And what's the maximum sentence that you could face when told? No, I agree. The maximum sentence in a house of correction could be two and a half. It could be. But here's the thing I'd like to point to, and it's also within the government's addendum. Again, without waiving our objection, but there's a green sheet appended there. Now, it's not green because it's not a color copy, but what's called a green sheet in the state district court is on page government addendum 18 and 19. And what it is, and it's how the vast majority of cases are resolved in the state district court, the defendant can put forth his proposed sentence. The prosecutor can put forth his or her proposed sentence. And if the court adopts it, and they say, in their brief, the government says, range of possible sentences, and says that that's why Mr. Guardado, for instance, would have known the range of possible sentences. But the flaw in the thinking here, respectfully, is that the range of possible sentences are the sentences on the green sheet. Meaning, if Mr. Guardado doesn't get the sentence he wants, he gets to reject that plea. And in order to adopt the prosecutor's sentence or the sentence that the court is adopting, proposing, he would then have to sign off on it. There's never any sign-off on any of his sheets. In fact... There's some resentment, Mr. Shea, that skirts the question that I ask. In the Massachusetts Rule of Criminal Procedure, Judge Shillman says in his rescript, that at the time the defendant is arraigned or pleads guilty, he is advised, according to the Massachusetts Rule of Criminal Procedure, of the maximum sentence available for his crime. State law requires the court to do that, whether it's a district court or a superior court. And that advice would have been given to Mr. Guardado, according to Judge Shillman, at least four times with respect to four different offenses. You're telling us that despite the Rule of Criminal Procedure, that that is somehow disregarded by certain state court judges. But there's nothing in the record that indicates that. And that seems to me quite presumptuous to ask us to assume that the Massachusetts courts don't follow the Massachusetts rules. Respectfully, and can I take time to answer the question? What's presumptuous is to think that the Massachusetts courts, which frankly don't function with the rarefied atmosphere of a federal court, sometimes there's 10, 20 people in a docket. They are not telling everybody on their way in, on arraignment, what the maximum sentence is. Another way to put it is if on habeas, if you're trying to make a prejudice argument based on the contention that in the four sentencings in question, he was never advised that he faced a sentence longer than a year, isn't the burden on you to put something in the record that shows that? Well, what I would say is I've been trying to show, and for instance, the government's Addendum 1, meaning court records are often wrong. The PSR is wrong. I understand that. What I'm saying is what is affirmatively in the record that supports the notion that he was not advised that he faced a sentence longer than a year? So far, what I've heard is what's affirmatively in the record is that things were happening in the district court where misdemeanors occur. But then as you acknowledge, that doesn't actually speak to the length of the sentence he was facing. Then Judge Selye points out, as Judge Hellman did, that there's a rule of criminal procedure that indicates he had to be advised that he was longer than a sentence. You're not saying there is no such rule. What you are saying is that in practice, that advice was not given to him, and all I'm saying is if so, unhabeas, the burden is on the defendant to put forward evidence showing that. But as far as I can tell, there is no such evidence. Well, what I would say is the evidence seems to be that we have a mentally ill person in crowded courts signing documents that all indicate, even from the government's exhibits, sentences of 6 months to 12 months. Nothing indicating that he would have been told other than the rule. And I would say that the rule isn't enough in the reality of how courts actually work. And the last thing I was trying to point to was on Government Addendum 1, which is in the PSR incorrectly, too, which is they say that there's a conviction here for possession with Distribute Class A. But when you look at the actual document itself, it says guilty filed, but it also says dismissed at the request of the Commonwealth. And it's not a continuance without a finding. My point is that there's so much going on in the district courts that the records are replete with errors. I've returned to district courts frequently and vacate convictions. There are things moving at such a pace there. Okay, thank you. You have a minute preserved. Thank you. Thank you. At this time, Mr. Crum can take the podium and introduce himself on the record. Yes, Your Honor, if it may please the Court. Randall Crum on behalf of the government. I think what the point Your Honors have been getting at is the key point here with respect to these set of arguments, which is the district court relied on the representation of the government that was not objected to below, that both many of these prior convictions were from pleas at which a person would be informed, and that that's what the law was. And there was not an objection below that that's not what happened. And, in fact, there was also not an objection, although documents weren't introduced at that time, that the majority of these were from pleas. We obtained these documents in part just to satisfy ourselves that that was, in fact, what the case, and that the majority of them were from pleas. But that wasn't objected to below. But certainly there was no objection that courts routinely fail to follow the literal law in whether they inform a person of the maximum sentence as they're required to do. And so the district court, I think, reasonably relied on that in the absence of an objection. And I don't even think it's in the opening brief here, specifically taking issue with the idea that the district courts are required to and do comply with the requirement that they inform them of maximum sentences. Mr. Crommett, I'm intrigued by your comment about the desire to satisfy yourselves that these were actually pleas, or many of them were pleas. We hear this argument, well, I've heard it many times sitting up here, about how it actually operates in Massachusetts courts. Do you know whether this presumption of regularity that we apply is a presumption that has a foundation? To be honest, I mean, I haven't practiced in state courts, and I don't know, and I haven't seen an estimation of the number of times or proportion of times. I heard a discussion here with defense counsel, which may or may not be correct as to what the meaning of this tender plea, where it says they've been informed of the range of sentences, suggesting it might not have been the full range. But I don't know the answer to that, just having not practiced it or had opportunity to discuss it. Well, what are we supposed to do if taking Greer as our guide, because I think, although it's not a habeas case, but it has some resemblance to the habeas standard for prejudice. The line in it that sticks with me is if you know you're a felon, you know you're a felon. But I guess the question is, did he know he was a felon? And what we're saying is there's reason to think he did, but if there are reasons to think he didn't, it could be made to a jury. Couldn't a jury conclude on this? Well, if you're saying, you know, it's all so confusing in district court and it was a district court case and I look at the actual time served, how do I know that he knew he was a felon? And as long as that's the case, then isn't there some probability that if you took it to a jury, he would have gotten a good answer? And so then Raheith makes a difference. Well, I think two points. First is that that's sort of the equation that was laid out in Guzman and Merced, which is that if you can sort of point to a reasonable probability or that you can point to the fact that a jury might have had a doubt based on Yeah, but here's the thing. The easy case is you served more than a year. Certainly. Okay, that's not this case. No, I understand. Do we have any case where somebody served less than a year in which we don't have a transcript of what they were informed about as to the sentence that they were facing in which we said no error under Raheith? No, and I think, again, I would like to make the first point on Greer, which I think Greer did change the equation some, and that the particular I think we, this Court cited in Norris, specifically said that generally you'll fail the third pronged plainer review unless the defendant can show that he would have presented evidence in this report that he did not in fact know he was a felon. And that's drawing on Greer and characterizing Greer to an extent. But I think that sets a higher bar than Guzman and Merced appears to set in simply saying if there were some doubts that a person could possibly harbor about whether a jury would find it, that that's enough to show the reasonable probability. My view is that Norris did raise the standard to show something like some affirmative evidence of lack of knowledge rather than simply some doubt where there is evidence of actual knowledge. And here we have six convictions in state court where you're supposed to be told or five of which, four of which we know are from pleas in which a person would have been told. This Court has considered that as a relevant factor. Each time you kind of phrase it, and I admire your precision about the way you phrase it, because you were almost about to say would likely have been told. But then you said would have been told. But the issue was was he told? Well, he was required to be told. And, again, this Court has relied on that in prior cases to say to draw the inference that the person was told what they're required to be told. But aren't those cases also cases in which the person served more than a year? To be sure. So you have a person who's got a mental illness, and you've got this lacuna, and you've got the fact that he never served more than a year, and it was also occurring in the district court. You put those together, what would make you think a juror couldn't reasonably conclude I don't know if he knew? So you haven't met your burden to show beyond a reasonable doubt that he knew. And why there's more than that required? Well, again, I think Breyer did change the standard. I think Norris sort of recognizes that, that there's sort of an affirmative obligation to show that you did not know, not merely that you were informed, but you might not have gotten it. But with respect, that can't be right, because if he was affirmed, but you show that you didn't know, that's not the reasonable probability standard, which we've said is not even more than a preponderance. Well, then I guess it's hard to reconcile with the Court's statement in Norris that he would have presented evidence to the district court that he did not, in fact, know he was ill. But in Norris, didn't he serve more than a year? I think that was actually a trial case. It was a different situation entirely, but it's characterizing Greer, which is the Supreme Court precedent, as to when Greer established this sort of inferential system. So, again, I'm relying on this. But Greer doesn't make it more than 50%, right? It can't, because they made it clear and we've made it clear that that's not the standard for prejudice under plain error. But the standard is, does appear to require, again, just citing the Court's words, some evidence that he did not, in fact, know. But going, just to answer Your Honor's question quickly with respect to the factors of this case, we recognize this case lies between, you know, cases like Burghardt and those members said. As we point out, there's a lot of ways, as the district court also recognized. This stood between them. But it found it was more like the cases where the Court had found that there was knowledge, based on the sheer number of prior convictions, the fact that the inference that he would have been informed at the time, the fact that he was not a juvenile at a time that went over a period of multiple years, from 17 to 25, was one conviction, one proceeding, four years earlier when he was a juvenile, the lack of a documented learning disability of the kind that would prevent a person from grasping or fully processing the information, which is different than a mental health issue. And that taking these different factors, the sheer number, the period of time out of which they occurred, the fact that he received actual sentences of up to a year when those members said received no prison time at all, that that was substantially larger in terms of the information that the government could have presented, and that that taken together was sufficient to, you know, to show that there was no reasonable probability. So that's, we understand it's not one or the other, but we believe that with the district court, that it's far closer to the cases in which this Court has found that the reasonable probability standard was not met. Thank you. Thank you, Attorney Crum. At this time, Mr. Shea, please introduce yourself back on the record for your one-minute rebuttal. Mark Shea. Thank you. I would just point out that the presumption of regularity, often these cases are within the PSR. But what are you going to have us replace it with in a case where you've provided no evidence, no proffer? What I would have, in a case like this, where there is no sentence of more than a year, and the one, the sentence he gets that's the longest, which is two years, is a combination of misdemeanor cases. So the time that Mr. Guardado goes to jail for the longest period of time, I believe, at least before he's involved in the criminal conduct, because he gets a two-and-a-half year probation violation, but is all on misdemeanors. And so they stack some misdemeanors, and he goes to jail for two years. And I would just repeat, it's not repeat, but two of the pleas in this case he's brought up from Bridgewater for. And so how we expect him to necessarily understand, and the regularity, at Bridgewater, to be at Bridgewater for more than five days, there has to be a petition to hold him. There's no evidence of any petition to hold him, ever, in anything in the PSR, or anywhere. And yet, we're going to say that everything is done in a regular way in the state court. But we know he's in Bridgewater because they're bringing him up from there, and the PSR has the records from Bridgewater for 17 days, meaning he stayed there 17 days. But I take it the point is, even in the documents the government has, we don't have a transcript of what he was informed about, correct? That is absolutely correct. Okay. Thank you for your time. That concludes argument in this case.